UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**ALEXANDER J. RICO,**

    **Plaintiff,**

v.                                                                                                    Case No: 5:22-cv-79-PRL

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

### Order

Plaintiff appeals the administrative decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Upon a review of the record, the memoranda, and the applicable law, the Commissioner's decision is **AFFIRMED**.

### I. Background

On June 5, 2017, and June 11, 2017, respectively, Plaintiff filed applications for DIB and SSI, alleging disability beginning June 11, 2017. (Tr. 124–25, 378–90). The claims were denied initially and upon reconsideration. (Tr. 189–94, 196–205). At Plaintiff's request, a hearing was held on August 1, 2019, where both Plaintiff and an impartial vocational expert (VE) testified. (Tr. 69–99, 209–10). On August 22, 2019, the Administrative Law Judge (ALJ) issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 167–83). Plaintiff requested review of the hearing decision, and on May 18, 2020, the Appeals Council remanded the case back to the ALJ for further administrative proceedings. (Tr. 162–64, 269–71).

On March 18, 2021, Plaintiff attended a second hearing. (Tr. 40–68). On April 5, 2021, the ALJ issued an unfavorable decision, finding Plaintiff not disabled. (Tr. 17–32). Plaintiff requested review of the hearing decision, which the Appeals Council denied on December 10, 2021. (Tr. 1–3). Plaintiff initiated this action on February 9, 2022. (Doc. 1). Plaintiff has exhausted his administrative remedies, and the final decision of the Commissioner is ripe for review under 42 U.S.C. § 405(g).

Based on a review of the record, the ALJ found that Plaintiff had the following severe impairments: a mental impairment, variously assessed as depression, anxiety, post-traumatic stress disorder (PTSD), schizoaffective disorder, and paranoid schizophrenia. (Tr. 23).

The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> He can lift up to 100 pounds occasionally and lift and carry 50 pounds frequently; and stand, walk, or sit for six hours each with normal and customary breaks in an eight hour workday. He can occasionally climb ropes and scaffolds, frequently climb ladders and stairs, and frequently use hazardous industrial machinery. He can understand, remember, carry out, and otherwise apply simple, routine, and repetitive tasks and instructions in a work environment with no fast-paced production quotas and no more than occasional brief interaction with coworkers, supervisors, and the general public. Moreover, he is limited to performing short and simple, one-or-two step tasks, and jobs of reasoning level one (1) only.

(Tr. 26). Based upon the RFC, and considering the testimony of the VE, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as general laborer, tin stacker, and yard laborer. (Tr. 31). Accordingly, the ALJ determined that Plaintiff is not disabled. (Tr. 32).

## II.   STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (first citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); then citing *Richardson*, 402 U.S. at 401); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm,

even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

### III.   DISCUSSION

On appeal, Plaintiff's sole argument is that the ALJ failed to properly evaluate the opinion of Plaintiff's treating psychiatrist, Gregory Onderko, D.O.

The parties do not dispute that Plaintiff's claim is subject to a new set of regulations for evaluating medical evidence that differs from the prior regulations. For claims filed on or after March 27, 2017, the Social Security Administration has issued new revised regulations regarding the evaluation of medical evidence, including medical source opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (final rules) ("We are revising our rules to ensure that they reflect modern healthcare delivery and are easier to understand and use. We expect that these changes will help us continue to ensure a high level of accuracy in our determinations and decisions."). Here, Plaintiff filed his DIB and SSI applications in June 2017, thus the new rules apply to his claim.

The new regulations impact agency policy in several important respects and contain several significant changes to prior medical evidence rules. *See* 81 Fed. Reg. at 62,560. To begin, the revised regulations redefine how evidence is categorized. Under the revised regulations, there are five categories of evidence: (1) objective medical evidence; (2) medical opinions; (3) other medical evidence; (4) evidence from nonmedical sources; and (5) prior administrative medical findings. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (2017).

Second, the definition of "medical opinion" has been considerably revised. For claims filed by adults on or after March 27, 2017, the regulations provide:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the [following] abilities: . . .
>
> Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). In contrast, "[o]ther medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id*. at §§ 404.1513(a)(3), 416.913(a)(3).

Third, for claims filed on or after March 27, 2017, the regulations change how the agency considers medical opinions and prior administrative medical findings. *See* 20 C.F.R. §§ 404.1520c, 416.920c (2017). Notably, the regulations no longer use the term "treating source," but refer to "your medical source(s)." 20 C.F.R. §§ 404.1520c, 416.920c. The Commissioner intentionally chose not to retain the "treating source rule" that previously required deference to treating source opinion evidence. *See* 82 Fed. Reg. at 5883. Rather, the

agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ will, instead, consider all medical opinions through the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant including length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. *Id.* §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). An ALJ may but is not required to explain how he or she considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. 416.920c(c)(2).

Here, the ALJ found Dr. Onderko's opinion to have low persuasiveness. (Tr. 30). In July 2019, Dr. Onderko completed a Psychiatric Impairment Questionnaire on Plaintiff's behalf. (Tr. 754–56).[1] Dr. Onderko indicated that he had evaluated Plaintiff on August 11,

---

[1] The Questionnaire was co-signed by Anton Dragonetti, ARNP. (Tr. 756).

2017, but Plaintiff "attend[ed] appointments sporadically and ha[d] gone through the initial intake process twice since being seen for the evaluation because of inactivity/not attending scheduled appointments." (Tr. 663, 754). Dr. Onderko diagnosed Plaintiff with paranoid schizophrenia and identified his symptoms as poor memory, sleep disturbance, delusions or hallucinations, substance dependence, paranoia or inappropriate suspiciousness, feelings of guilt/worthlessness, difficulty thinking or concentrating, oddities of thought, perception, speech or behavior, perceptual disturbances, social withdrawal or isolation, blunt, flat or inappropriate affect, illogical thinking or loosening of associations, manic syndrome, intrusive recollections of a traumatic experience, and generalized persistent anxiety. (Tr. 754). He opined that Plaintiff's impairments would cause him to be absent from work more than twice a month, and that he had marked limitations in activities of daily living and maintaining social functioning, and frequent deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. (Tr. 755–56).

The ALJ found this opinion to have low persuasiveness because it was "not sufficiently supported by medical evidence" and "inconsistent with the relatively normal or benign findings." (Tr. 30). Although the regulations require the ALJ to articulate consideration of the supportability and consistency factors when evaluating a medical opinion from a medical source, they do not require the ALJ to use any specific language to articulate consideration of the factors. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). As long as the evaluation addresses the substance of the factors, the ALJ meets the articulation requirement. *Id.* Here, the ALJ used the terms supportability and consistency, while also providing specific reasons why Dr. Onderko's opinion was inconsistent with the clinical findings and unsupported by his own treatment notes. (Tr. 30).

First, the ALJ found Dr. Onderko's opinion "not sufficiently supported by medical evidence" because it "offered few instances of mental status abnormalities that were present upon examination[,]" instead "primarily cit[ing] . . . [Plaintiff's] subjective reports and the subjective reports of . . . [his] mother." (Tr. 30). Dr. Onderko's initial mental status examination of Plaintiff revealed that Plaintiff was cooperative, alert, made fair eye contact, and was oriented to person, place, and date. (Tr. 27, 664). Plaintiff "appeared to have the odor of alcohol and he admitted to alcohol use the night before." (Tr. 27, 664). Further, the ALJ noted that although Plaintiff "described his mood as anxious and his affect was congruent to his mood, [he] denied having any suicidal or homicidal ideation or intent, and he did not display any active hallucinations." (Tr. 27, 664).

Also, while Plaintiff "admitted to paranoia and suspiciousness with occasional auditory hallucinations, as well as racing thoughts and inability to sleep, the examining physician again noted no active hallucinations at the time." (Tr. 27, 664, 665). The ALJ noted Plaintiff "was assessed with rule out schizoaffective disorder bipolar type, and cannabis and alcohol dependence and abuse, and recommended continued medication therapy, along with substance abuse treatment." (Tr. 27–28, 664). On a subsequent visit on September 7, 2017, Dr. Onderko found Plaintiff with fair insight, no active hallucinations, "logical and goal-directed and reality orientation judgment" and no suicidal or homicidal ideation or intent. (Tr. 679). The ALJ found that "[p]rogress notes show[ed] that [Plaintiff] reported noticing a positive change in his mood stability upon beginning to take his medications." (Tr. 28, 682).

Further, to support his opinion, Dr. Onderko primarily listed Plaintiff's subjective symptoms, including his complaints of "anxiety, increased tension, feelings of nervousness or apprehension[;]" his description of "episodes of psychosis occurring outside of substance

abuse[;]" his description of his mood "as anxious, and his affect was congruent to his mood[;]" and his reports "of having difficulty remembering events leading to his hospitalization in the past." (Tr. 754–55). In addition to Plaintiff's self reported symptoms and complaints, Dr. Onderko cited to Plaintiff's mother's reports that Plaintiff "experienced visual hallucinations and exhibited signs of psychosis" and "that these symptoms were partially responsible for his hospitalization." (Tr. 755). Thus, the ALJ properly rejected Dr. Onderko's opinion to the extent it was based on Plaintiff's subjective complaints and unsupported by objective medical evidence. *See Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007) (stating that treating physician's opinion may be discounted where "the opinion appears to be based primarily on the claimant's subjective complaints of pain") (citation omitted); *Hutchison v. Kijakazi*, No. 3:21-cv-211-DCP, 2022 WL 4388285, at *6 (E.D. Tenn. Sept. 22, 2022) (stating, under new regulations, that "[t]he fact that a medical source's opinion is based primarily on a claimant's subjective complaints and reported symptoms is an adequate basis for discounting the supportability of the opinion").

Second, the ALJ found Dr. Onderko's opinion was "inconsistent with the relatively normal or benign findings discussed throughout this decision." (Tr. 30). The ALJ noted that in July 2017, Plaintiff "was involuntarily committed . . . after he became aggressive and upset with his mother and brother[,] [and] [u]pon law enforcement arrival, [Plaintiff] became uncooperative and had disorganized thoughts, was incoherent, and psychotic." (Tr. 27, 620, 622, 636). However, "[a]fter being admitted to the crisis stabilization unit, he was placed on a regimen of psychotropic medications, and his though [sic] process began to improve [and] [h]e became polite and courteous, and well-groomed." (Tr. 27, 630–35). Upon discharge, his mental status exam revealed calm motor activity, appropriate mood, affect, speech and

perception, organized thought process, and no delusions or suicidal/homicidal ideations. (Tr. 27, 622–26). The ALJ noted that Plaintiff "was discharged with instructions to seek continued outpatient mental health treatment." (Tr. 27, 624, 650–54).

On a subsequent psychological evaluation, Plaintiff "was neatly dressed and groomed, alert and fully oriented." (Tr. 27, 640). The ALJ noted that "it [was] unclear whether he follow[ed]-up with outpatient treatment or if he was still under medication therapy." (Tr. 27). Plaintiff showed "no signs of active delusions, hallucinations, mania, or overt thought disorder." (Tr. 27, 640). The ALJ acknowledged that Plaintiff's "affect was constricted and his mood was depressed and anxious/paranoid" and "his fund of information was impaired," while "his abstract thinking and verbal reasoning were low average." (Tr. 27, 640). However, Plaintiff's "speech was logical, coherent, and goal directed[,]" and he "was able to recall two of three common objects after five minutes[,] [h]is working memory was average[,] . . . [and] arithmetic ability was average." (Tr. 27, 640).

The ALJ considered Plaintiff's subsequent treatment history, noting that in June 2018, he "returned to Suncoast after a period of time without documented treatment, where he was reported living in the streets and having an alcohol abuse problem." (Tr. 28, 717). The ALJ acknowledged Plaintiff's mother's reports that Plaintiff "was very maniac and had racing thoughts, with episodes of rapid speech, mood swings, crying, and depression, as well as frequent irritability and general anxiety." (Tr. 28, 717). Plaintiff underwent an intake evaluation, was diagnosed with paranoid schizophrenia and alcohol use disorder, and was restarted on medication therapy and individual therapy sessions. (Tr. 28, 719–20). The ALJ noted that "[s]ubsequent follow-up psychiatric exams indicate[d] that [Plaintiff] was stable from a psychiatric standpoint while under the medication regimen." (Tr. 28, 726, 728, 731).

Indeed, October 16, 2018, treatment notes revealed Plaintiff was taking his medication and reported that the "long-acting injectable help[ed] decrease psychosis." (Tr. 726). While at times Plaintiff had an anxious mood and affect, he displayed a well-groomed appearance, no disorientation, normal attitude, behavior, psycho-motor activity, and speech, appropriate thought process, good eye contact, insight, and judgment, and average intellectual functioning. (Tr. 28, 726, 728; *see* Tr. 731 (finding that Plaintiff had normal mood, attitude, and speech, and appropriate affect and thought process)). The ALJ noted that Plaintiff "did not exhibit any suicidal or homicidal ideations, and no signs of delusions, hallucinations, paranoia, or abnormal thought content." (Tr. 28, 726, 728, 731).

Further, the ALJ considered treatment records from April 2019, showing Plaintiff "was hospitalized for one day after reporting that he wanted to kill himself and crying during the exam." (Tr. 28, 775–76). Plaintiff "admitted to being off his medications for about a month[,]" although he denied hearing voices since "getting his monthly shots." (Tr. 28, 775–76). Plaintiff also "admitted to ongoing alcohol drinking and daily marijuana use." (Tr. 28, 776). Plaintiff's mental status exam showed appropriate dress and average hygiene, and calm motor activity with open attitude and behavior. (Tr. 28, 776). The ALJ noted that Plaintiff's affect was flat with depressed mood and he demonstrated poor judgment, but "his anxiety was mild with appropriate perception and speech[,] [and] [h]is thought content was organized and relevant with fair insight." (Tr. 28, 776). The following day, upon discharge, Plaintiff "was . . . sober, . . . alert and lucid, cooperative, and with no psychosis or suicidal/homicidal ideations." (Tr. 28, 758).

Moreover, the ALJ noted that more recent treatment records "document similar patterns, where [Plaintiff] [was] hospitalized after becoming intoxicated and argumentative."

(Tr. 28, 821, 823–24). "[D]uring the mental status exam, [Plaintiff] was alert and lucid, coherent, compliant, and cooperative with neutral and linear affect, and no evidence of hallucinations or suicidal ideations." (Tr. 28, 821; 824). The ALJ found that "[d]espite his persistent alcohol and drug abuse, the recent outpatient records from Suncoast confirm[ed] that when [Plaintiff] remain[ed] compliant with his medications, he remain[ed] psychiatrically stable and denying symptoms of mania/hypomania, depression, or psychosis." (Tr. 28, 868, 870–71). Plaintiff's "latest mental status examination finding showed full orientation, normal attitude and behavior, normal mood, and appropriate affect." (Tr. 28, 871). Thus, the medical evidence, as discussed in the ALJ's decision, supports the ALJ's determination that Dr. Onderko's opinion was inconsistent with the "relatively normal or benign findings." (Tr. 30).

Finally, Plaintiff argues that "[t]he closest the ALJ ever came to truly evaluating Dr. Onderko's opinion was when he briefly described it as 'outdated.'" (Doc. 25 at 13). Plaintiff suggests that this is "an acknowledgment of the fact that the opinion was rendered in July 2019[,] . . . after [Plaintiff's] date last insured of December 31, 2018." *Id*. However, as the Commissioner points out (*see* Doc. 26 at 12), it appears the ALJ considered Dr. Onderko's assessment outdated because it applied the old paragraph B criteria.[2] (*See* Tr. 29).

Accordingly, the ALJ applied the correct legal standards to the opinion of Dr.

---

[2] "Under the prior paragraph B criteria, the ALJ examined whether the claimant was limited in his or her (1) activities of daily living; (2) social functioning; or (3) concentration, persistence, or pace; and (4) whether the claimant experienced episodes of decompensation." *Montgomery v. Comm'r of Soc. Sec.*, No. 3:17-cv-00617-CHL, 2019 WL 1427560, at *6 (W.D. Ky. Mar. 29, 2019) (citing 20 C.F.R. Pt. 404, Subpt. P, § 12.00C (2016); 20 C.F.R §§ 404.1520a, 416.920a). "[U]nder the new paragraph B criteria, an ALJ evaluates the claimant's (1) ability to understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself." *Id*. (citing 20 C.F.R. Pt. 404, Subpt. P, § 12.00E(1)-(4) (2017); 20 C.F.R §§ 404.1520a, 416.920a (2017)).

Onderko. Even if this Court were to disagree with the ALJ's resolution of the factual issues, and would resolve them differently, the ALJ's decision nevertheless must be affirmed where, as here, it is supported by substantial evidence in the record as a whole. *See Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990).

### IV.   CONCLUSION

For the reasons stated above, the ALJ'S decision is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g). The **Clerk is directed** to enter final judgment for the **Commissioner** and **close the file**.

**DONE and ORDERED** in Ocala, Florida on March 24, 2023.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties